UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,          : Docket #23-mj-06612

                    Plaintiff,    :

     -against-                     :

THOMAS ALEXANDER BRANDENSTEIN,     : New York, New York
                                     October 2, 2023
                    Defendant.

--------------------------------:

PROCEEDINGS BEFORE
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                      SOUTHERN DISTRICT OF NEW YORK
                      BY:  MITZI STEINER, ESQ.
                      1 St. Andrew's Plaza
                      New York, New York 10007

For Defendant:        FEDERAL DEFENDERS OF NEW YORK
                      BY:  SYLVIE J. LEVINE, ESQ.
                      52 Duane Street, 10th Floor
                      New York, New York 10007



Transcription Service: Marissa Mignano Transcription
                      Phone:  (631) 813-9335
                      E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1          THE DEPUTY CLERK:  This is in the matter of

2     the United States versus Thomas Alexander

3     Brandenstein, Case Number 23-mag-6612.

4          Counsels, please state your appearances for

5     the record.

6          MS. STEINER:  Good afternoon, Your Honor.

7     Mitzi Steiner for the Government.  And I'm

8     accompanied at counsel's table by Special Agent

9     Sean Quinn from HSI.

10          THE COURT:  Hi.  Good afternoon.

11          MS. LEVINE:  Good afternoon.  The Federal

12     Defenders of New York by Sylvie Levine on behalf of

13     Mr. Brandenstein.

14          THE COURT:  Good afternoon.

15          May I please have the date and time of

16     arrest?

17          MS. STEINER:  Yes, Your Honor.  The

18     defendant was arrested on Friday, September 29th, at

19     approximately 11:45 p.m.  He waived presentment

20     until today.

21          THE COURT:  Mr. Brandenstein, I'm

22     Magistrate Judge Aaron.  Are you able to understand

23     me through the interpreter?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  You are here because you're

charged with certain crimes by a complaint.  The purpose of today's proceeding is to advise you of certain rights that you have, to inform you of the charges against you, to consider whether counsel should be appointed for you, and decide under what conditions, if any, you should be released pending trial.

Now, I'm going to explain certain constitutional rights that you have.  You have the right to remain silent.  You're not required to make any statements.  Even if you've already made statements to the authorities, you do not need to make any further statements.  Any statements you do make can be used against you.

You have the right to be released, either conditionally or unconditionally, pending trial, unless I find there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community.

If you're not a United States citizen, you have the right to request that a government attorney or a law enforcement official notify a consular officer from your country of origin you've been arrested.  In some cases, a treaty or other agreement may require the United States Government

to give that notice whether you requested it or not.

You have the right to be represented by an attorney during all court proceedings, including this one, and during all questioning by the authorities. You have the right to hire your own attorney. If you cannot afford an attorney, I will appoint one today to represent you.

Do you understand those rights as I've just explained them?

THE DEFENDANT: Yes, sir.

THE COURT: So I have before me a financial affidavit indicating that you would like for me to appoint Ms. Levine as your counsel. Am I correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you signed this financial affidavit?

If I could ask you to please raise your right hand. Do you swear that the contents of this affidavit are true and correct, so help you God?

THE DEFENDANT: Yes, I swear.

THE COURT: All right. Based upon the contents of the affidavit, I am approving the appointment of Ms. Levine as your counsel and affixing my signature to reflect that.

I have before me a complaint that charges

```
 1   you, Mr. Brandenstein, with one count of coercion
 2   and enticement of a minor and one count of travel
 3   with intent to engage in illicit sexual conduct.
 4          Let me ask, Ms. Levine, have you had an
 5   opportunity to review the charges in the complaint
 6   with your client?
 7          MS. LEVINE:  Yes, Your Honor, we have.
 8          THE COURT:  And do you waive its public
 9   reading?
10          MS. LEVINE:  We do.
11          THE COURT:  Mr. Brandenstein, you have the
12   right to a preliminary hearing at which the
13   Government will have the burden of showing that
14   there's probable cause to believe that the crime for
15   which you're being charged has been committed and
16   you're the person who committed it.  At the hearing,
17   you or your counsel would be entitled to
18   cross-examine witnesses and introduce evidence.
19   However, a preliminary hearing will not be held if
20   you're indicted by a grand jury before the date of a
21   preliminary hearing.  I will set the preliminary
22   hearing date at the conclusion of these proceedings.
23          I'll next hear from the Government with
24   respect to its position on bail, detention or
25   release.
```

1          MS. STEINER:  Your Honor, the Government is

2     seeking detention in this case on both risk of

3     flight and dangerousness.

4          THE COURT:  And, Ms. Levine, I assume

5     you'll be contesting?

6          MS. LEVINE:  That's correct.

7          THE COURT:  All right.  So let me first

8     hear from the Government with respect to

9     articulating its reasons for seeking detention on

10    those two grounds, and then, of course, I'll hear

11    from defense counsel in opposition, for lack of a

12    better term.

13         MS. STEINER:  Thank you, Your Honor.  I'll

14    note from the start that there is a presumption of

15    detention in this case under 18 U.S.C. 3142(e)(3)(E)

16    on both counts that have been charged in the

17    complaint.

18         THE COURT:  Just give me a second, please.

19    Could you restate the statutory provision for me?

20         MS. STEINER:  Of course, Your Honor.  It's

21    18 U.S.C. 3142(e)(3)(E).

22         THE COURT:  Okay.  Ms. Levine, do you agree

23    that it is a presumption case?

24         MS. LEVINE:  Yes, Your Honor.

25         THE COURT:  Okay.  Thank you.  Please

1    proceed.

2              MS. STEINER:  Thank you, Your Honor.  In

3    addition to this being a presumption case as to both

4    counts, the conduct here, as alleged in the

5    complaint, clearly warrants detention.  And I want

6    to provide Your Honor with a brief summary of the

7    conduct.  I don't want to get into every detail

8    because that is laid out in the complaint.

9              But for sake of background, the conduct in

10   this case began in March of 2023 when this defendant

11   began having extensive communications with a minor

12   victim who was then only 15 years of age.  And the

13   defendant essentially groomed this victim over a

14   period of several months by sending communications

15   to the victim in which he professed love for the

16   victim, essentially encouraged the victim to believe

17   that he was in a relationship with the defendant.

18   And those messages became increasingly sexually

19   explicit and sexual in nature, including, among

20   other things -- and, again, it's laid out in more

21   detail in the complaint -- images of the defendant's

22   genitalia, images of the defendant masturbating,

23   among many other things.

24             In June -- and I should note before I

25   continue, Your Honor, the defendant, although this

is a two-defendant complaint, was clearly the driver
of those communications.  It was he and he alone
that was in direct communication with the victim and
was the primary actor in that scheme of enticing the
victim at that point in time.

The defendant and his codefendant, the
defendant's partner, then arranged to fly from their
residence in Berlin, Germany, to the United States
with the purpose of having a sexual encounter with
the victim.  They both were in direct communication
with the victim leading up to, and then during their
travels.  And it was very clear from their text
communications that the purpose of their travels was
again to engage in this illicit sexual conduct.

When the defendant and his codefendant then
arrived in the United States, they came to the
jurisdiction.  The defendant rented a hotel room
under his name in Manhattan for a period of several
days, and there's video surveillance footage of the
defendant accompanying the minor victim in the
immediate proximity of that room.  And the
Government then subsequently recovered several
images and videos from a device at the victim's
residence which shows exactly what took place in
that room, which is incredibly disturbing and sad.

What happened in that room is that the defendant and
his codefendant engaged in a series of sex acts
with, again, this 15-year-old minor victim, which
were not only encouraged and initiated, but, also,
these sex acts were recorded.

The defendant then left the jurisdiction
with his codefendant shortly thereafter and returned
for the first time since that point in time this
past Friday.

There is an extreme risk of flight in this
case, and I don't use that term lightly. The
defendant has no legal status here. His husband,
family, all of his connections are in Berlin,
Germany. He's had, as Pretrial notes, extensive
travel during the last several years. As noted, he
is a citizen only of Germany. And Germany notably,
and the Government has confirmed this with DOJ
headquarters, has no extradition policy with the
United States. So were the defendant to return to
Germany, the Government would have no way of getting
him back to the United States for purposes of this
prosecution.

The defendant also has extensive reasons
for fleeing. He is currently looking, under
Count One, at a mandatory minimum sentence of

ten years. And as the Government has conveyed to
defense counsel, the Government's investigation is
robust and ongoing. It seized two devices from the
defendant at the time of his arrest on Friday. It
intends to seek warrants on both of those devices
and to continue to investigate its case, expecting
that, for example, a production charge for the
recording of those sex acts with the victims may
very well be likely by the evidence that is
uncovered during the course of the Government's
investigation once it has additional time to develop
that evidence.

So the risk here of the defendant fleeing
is extremely high because he has every reason to
flee, given the charges that he faces here, and his
entire life is in Germany. The United States would
have no way of bringing him back here, as I said,
for purposes of prosecution.

The risk of danger here, Your Honor, is
also very significant. The last time the defendant
was in this jurisdiction, it was for the sole
purpose of engaging in sex acts with a minor victim.
He was able to do that at the time. He had a Visa.
He entered the jurisdiction, reserved a hotel room
for the purpose, again, of committing those crimes

1   with that minor victim.  And, now, as I've read in
2   the Pretrial Services report, is requesting that the
3   Court return him to a hotel room in Manhattan where,
4   presumably, there would be very little to prevent
5   him from engaging in the same type of criminal
6   conduct that he previously did only as recently as
7   July.  And it's particularly disturbing, Your Honor,
8   that the defendant is flying back to the same
9   jurisdiction where he last engaged in these sex
10  acts.  And while the Government doesn't have direct
11  evidence of the purpose of his trip, I think it can
12  be inferred or presumed that there may have been a
13  risk, if not for his arrest, that he would have
14  engaged in additional criminal activity.
15          So the danger to the community here is also
16  very significant.  And I think that the
17  recommendations here from Pretrial -- although, I
18  recognize they're trying to put forth a robust
19  package here of supervision -- is just not
20  sufficient.  I mean, GPS monitoring for an
21  individual who, again, committed sex acts previously
22  at the same similar location would not give the
23  Government any confidence that Pretrial would
24  actually be able to prevent similar criminal conduct
25  in the future.

1          And finally, Your Honor, I would just point
2     Your Honor to the factors to be considered under the
3     Bail Reform Act.  And I'm looking now to 18 U.S.C.
4     3142(g).  I'll just go through them quickly because
5     I think each of them overwhelmingly support
6     detention in this case.  So the nature and
7     circumstances of the offense charged, incredibly
8     egregious, disturbing conduct; the weight of the
9     evidence against the person.  Again, Your Honor,
10    there's direct text communications, there's a hotel
11    surveillance footage, and then there's a recording
12    of sex acts with the minor victim and the defendant
13    appearing nude, and the codefendant engaged in a
14    direct sex act with the victim.  The history and
15    characteristics of this individual.  I'll not,
16    Your Honor, that it's been difficult for the
17    Government to pull the criminal history of this
18    individual, given that he is a foreign national;
19    although, we're endeavoring to do so.  But I think
20    the fact that the defendant engaged in this grooming
21    behavior and enticement over a period of several
22    months, Your Honor, can take to infer about the
23    character of this individual.  And, finally, the
24    nature and seriousness of the danger to any person
25    or the community.

1            And I won't belabor the point, Your Honor,

2    but as I've stated it's clearly, the Government's

3    position that this individual poses a real and

4    present danger to the community if not for his

5    incarceration.  So for all of those reasons,

6    Your Honor, the Government would seek detention on

7    these facts in this case for this defendant.

8            THE COURT:  Ms. Levine.

9            MS. LEVINE:  Thank you, Your Honor.  The

10   person sitting before you is a 57-year-old with no

11   criminal record.  The Government knew about this

12   conduct.  It issued a criminal complaint.  It issued

13   an arrest warrant.  If he had any criminal record,

14   they would have brought it before you.  He has

15   absolutely none.

16           And it is against that background that I

17   would like to propose a bail package.  Lots of

18   people on these charges -- and these are obviously

19   serious charges -- lots of people on these charges

20   in this district get bail.  I think they often get

21   bail on consent if they are US citizens.  And, of

22   course, Mr. Brandenstein is not a US citizen, but

23   that is not dispositive in the Court's determination

24   about bail.

25           Of course -- and the Government, I'm sure,

will confirm this -- when he was arrested -- first
of all, he got on the airplane to JFK voluntarily,
of his own free will.  When he was there, I
understand from the agents that Customs and Border
Patrol seized his passport.  It's in the possession
of the Government.  He does not have it.  He cannot
travel back to Germany.  He cannot travel anywhere.
And so our proposal is that he be released on a GPS
ankle monitor.

Now, this is a tough case for me, frankly,
because he doesn't have real ties to the city.  But
that doesn't mean that someone can't get bail.  It
means that we can set up ties.  We can set up a
physical tie in the form of a GPS bracelet; at which
point, Pretrial Services will know where he is all
the time.  He has a hotel reservation that's been
paid for.  He could go to that hotel.  Contrary to
the Government's arguments, there's nothing about
hotels that are inherently dangerous.  He obviously
is not permitted to engage in any of this conduct.
They have his passport.  They have his devices.
There's nothing about going to a hotel that makes
this conduct more or less likely.  And he would have
to set up some additional ties.  He would have to
literally find a place to live.

1          As Your Honor knows from his financial
2     affidavit and from the financial information he
3     provided to Pretrial, while he qualifies for
4     appointed counsel, he is not without any funds,
5     which, of course, is not the standard for counsel,
6     but he has some income.  And I should say he has
7     some savings, which would enable him to rent a room
8     in the Southern or Eastern Districts of New York for
9     the number of months that this case was pending.
10    And a GPS monitor would watch him the whole time.
11    Pretrial Services, as directed, would monitor him
12    the whole time.
13         He has absolutely no other red flags, no
14    history of drug use, or anything else that would
15    make it unlikely that he could comply.  He's a
16    working person.  He's worked his whole adult life.
17    And as I said, he has absolutely no criminal record.
18         Now, I have to talk for just a minute about
19    these charges because I actually think that legally
20    they're kind of interesting.  So this is obviously a
21    serious charge, and the penalties for it are
22    obviously extremely serious here in the federal
23    system.  But what makes it subject to federal
24    jurisdiction is the use of interstate communication
25    devices, essentially.  Right?  That's what makes it

federal.  And the way that 2422 is written,
basically what it criminalizes in Section B is the
enticement of a minor to engage in a criminal
offense.  So in other words, you have the
international component, you have the enticement
component, and then you have to have a criminal
offense component.  And I haven't dug really deeply
yet into the three offenses that the Government
mentions at the bottom of -- on page 1 of the
complaint, where it's three New York Penal Law
sections that are cited.  The first two, 130.25 and
130.40, those are E nonviolent felonies in the State
of New York.  And 130.55 is a B misdemeanor.

And in an interesting twist, two of those
three are not crimes -- if there is just a sexual
act and it involves a minor, they are not crimes.
You need an additional factor.  You need, for
example, physical threat.  You need violence.  You
need a lack of consent.  You need a weapon.  And, of
course, none of those things are present here.

So I'm not saying these charges are not
serious.  I'm not saying the penalties aren't
serious.  I'm not even saying that they cannot
possibly be made out at trial.  I'm saying that
based on my review of the complaint, there is

absolutely nothing about those aggravating factors I
just mentioned:  An act of violence, an act of
physical threat, an act of physical coercion.  I
understand the Government is saying there's some
kind of emotional coercion that perhaps took place,
but I don't think that is criminalized by the State
sex statutes.  So this is all to say -- at least two
of them, I should say.  I think the third is harder
for us.  But this is just to say that in
distinguishing this case from others, those missing
pieces I do think are relevant to the Court's
determination.

             And I'm not here to make arguments about
the morality of sex with teenagers.  I'm going to
leave that for another day.  But I do think it is
relevant that it is only partially criminalized by
New York State.  It's not at all criminalized in
Germany.  And for these reasons, a 57-year-old with
no criminal record should be released.  And we
shouldn't penalize someone for simply not being a US
citizen.  That would be an improper use of the Bail
Reform Act.  It can't be that any citizen of another
country doesn't get bail.  And, in fact, Your Honor
knows from sitting here, lots of people who are
citizens of other countries do get bail.

1          Admittedly, this is going to require a

2     little creativity in terms of a residence, but it's

3     eminently doable considering the fact that he has

4     some funds and he, consistent with his lifetime of

5     not having encounters with the criminal justice

6     system and with working, there's no reason to think

7     he couldn't get an apartment and stay in this

8     district the whole time monitored by a GPS.

9          THE COURT:  Any rebuttal, for lack of a

10    better term, from the Government?

11         MS. STEINER:  Your Honor, I'll just note

12    briefly for the record that New York Penal Law

13    130.25 is rape in the third degree; 130.40 is

14    criminal sex act in the third degree; 130.55 is sex

15    abuse in the third degree.  I think the defense

16    counsel here didn't want to opine on the morality of

17    sex with a teenager, here a 15-year-old.  I think

18    the case law is clear that, again, the evidence here

19    is strong, would clearly make out Count One, which

20    is the most significant offense here.

21         Under Count One, the Government would not

22    need to prove at trial that the defendant even

23    completed a sex act with the minor, only that he

24    attempted to do so.  And so I don't know if I fully

25    followed defense counsel's argument, but I think

1    that the weight of the evidence here and, again, the

2    conduct would all speak to real danger and risk of

3    flight associated with the severity of these

4    offenses.

5         MS. LEVINE:  Sorry.  Just on that, the

6    Government's right about the titles of those

7    statutes.  It doesn't change the fact that rape in

8    the third degree is an E nonviolent felony in

9    New York State.  Criminal sexual act in the third

10   degree is an E nonviolent felony in the State, and

11   sex abuse in the third degree is a B misdemeanor.

12        If the Government didn't follow the

13   argument, I want to make sure the Court did.  At

14   least two of these statutes, it is not a violation

15   of those statutes if you simply have sexual

16   encounters with a minor.  There has to be something

17   additional, like violence, force, a weapon, et

18   cetera.  That's what I'm saying, that it's not

19   enough to read the titles of the statutes.  You have

20   to read all the elements, and two of them, at least,

21   require more.

22        THE COURT:  But the third does not?

23        MS. LEVINE:  I think the third is a much

24   harder question for us, to be perfectly candid, but

25   that is still an E nonviolent felony.  And for all

1  of the reasons that I mentioned, given his lack of a

2  record, his age, his life as a working person, we

3  ask that the Court impose Pretrial Services'

4  recommendation.  They recommend a bail package here,

5  and we suggest the Court do the same.

6         THE COURT:  All right.  I'm going to take a

7  brief recess.  I'll ask Pretrial Services to join me

8  in the back.

9         (Recess.)

10         THE COURT:  Mr. Brandenstein, I'm required

11  under the law to release you either with or without

12  conditions imposed unless I determine there are no

13  conditions that will reasonably assure your

14  appearance in court as required and the safety of

15  the community.

16         In making a bail determination, I'm

17  required to consider the following factors:  The

18  nature and circumstance of the offense charged, the

19  weight of the evidence against you, your history and

20  characteristics, and the nature and seriousness of

21  the danger to any person of the community that would

22  be posed by your release.

23         You heard a discussion about presumptions,

24  and under the Statute 18 U.S.C. 3142(e)(2)(E),

25  there's a presumption given the type of crime that's

1    involved in favor of detention.  It is a rebuttable

2    presumption and the Government ultimately bears the

3    burden of establishing by clear and convincing

4    evidence that you're a danger to the community or

5    establishing by a preponderance of the evidence that

6    you're a flight risk.  And my determination here

7    basically rests on the presumption and it rests on

8    risk of flight.  Given that you don't have ties to

9    the United States, your ties are in Germany, given

10   the length of sentence that could be imposed should

11   you be found guilty, the strength of the

12   Government's case, I find that you have not rebutted

13   the presumption.  So my decision is to detain based

14   upon risk of flight because I do find that the

15   Government, by a preponderance of the evidence, has

16   established a risk of flight.

17              Ms. Levine, what are your wishes with

18   respect to the preliminary hearing date?

19              MS. LEVINE:  We will waive to the 30th day.

20              THE COURT:  Kiva, what's 30 days from

21   today?

22              THE DEPUTY CLERK:  November 7.

23              THE COURT:  November 7th -- sorry, 2nd, you

24   said?

25              THE DEPUTY CLERK:  7th.

1          THE COURT:  7th.

2          All right.  Is there anything else from

3     either side?

4          MS. STEINER:  Your Honor, I'll just note

5     the record that a consular notification has been

6     made to Germany.

7          THE COURT:  Okay.  Anything else from the

8     defense?

9          MS. LEVINE:  No, Your Honor.

10         THE COURT:  All right.  We stand adjourned.

11    Thank you.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  <u>C E R T I F I C A T E</u>

2

3      I, Marissa Mignano, certify that the foregoing

4  transcript of proceedings in the case of

5  UNITED STATES OF AMERICA v. THOMAS

6  ALEXANDER BRANDENSTEIN, Docket #1:23-MJ-06612, was

7  prepared using digital transcription software and is

8  a true and accurate record of the proceedings.

9

10

11  Signature ____*Marissa Mignano*_____

12                  Marissa Mignano

13

14  Date:      October 5, 2023

15

16

17

18

19

20

21

22

23

24

25